605 F.2d 1331
 21 Fair Empl.Prac.Cas. 257,
21 Empl. Prac. Dec. P 30,345
Ray MARSHALL, Secretary of Labor, United States Department
of Labor, (Equal Employment Opportunity Commission,
substituted in the place and stead of Ray Marshall,
Secretary of Labor, etc.), Plaintiff-Appellant,
v.
SUN OIL COMPANY (DELAWARE), a corporation, Defendant-Appellee.
 No. 77-1954.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 5, 1979.
 
 Jacob I. Karro, Joseph Woodward, Attys., Dept. of Labor, Washington, D. C., for plaintiff-appellant.
 Royal H. Brin, Jr., Rufus N. McKnight, Jr., G. David Neal, Susan F. Hamelin, Dallas, Tex., for defendant-appellee.
 Frank C. Morris, Jr., McGuiness & Williams, Beatrice Rosenberg, Asst. Gen. Counsel, EEOC, Washington, D. C., for amicus curiae Equal Employment Advisory Council.
 Appeal from the United States Court of Appeals for the Northern District of Texas.
 Before TJOFLAT and VANCE, Circuit Judges, and ALLGOOD, District Judge.*
 VANCE, Circuit Judge:
 
 
 1
 The Secretary of Labor[1] originally brought this action in October 1974 under the Age Discrimination in Employment Act (the Act or ADEA), 29 U.S.C. §§ 621-634, to enjoin Sun Oil Company of Delaware from violating the Act in the future and to obtain restitution and reinstatement for 121 employees who were wrongfully terminated from their jobs because of age. Sun Oil subsequently moved for summary judgment on the ground that before filing suit, the Secretary failed to satisfy his statutory duty to investigate and to attempt to effect voluntary compliance with the Act's requirements through informal methods of conciliation, conference, and persuasion. The district court agreed, granting summary judgment for Sun with respect to all but two of the 121 employees. The Secretary appeals. The district court's decision must be reversed.
 
 FACTS
 
 2
 This suit involves 121 of the 156 employees who were terminated by Sun Oil's North American Exploration and Production Group during a reorganization in December 1972. In separate letters, two of these employees, Cecil Dearman and Byron Herford, notified the Secretary of their intent to sue Sun under the Act. Dearman also complained that other employees were discharged because of age.
 
 
 3
 Meetings were held between Sun and Labor Department representatives to discuss Herford's and Dearman's charges. At the first meeting on February 16, 1973, the Secretary's compliance officer requested information needed to investigate the charges, which Sun supplied, and the parties discussed the Act's requirements as well as Dearman's case. Though Sun denied having a discriminatory purpose, it admitted that it had attempted to retain employees with "the most potential for future development."
 
 
 4
 After examining Sun's records and interviewing its employees, the compliance officer held a second meeting with Sun on April 3, 1973. Dearman's case was again discussed, and the compliance officer pointed out that Herford's complaint would also be investigated. Sun did not deny that employees who were younger and less qualified than Dearman had been retained in his department. Sun again stated that it had no discriminatory purpose.
 
 
 5
 A third meeting was held on April 27, 1973. The compliance officer informed Sun of documented findings showing that it had discriminated against Dearman and Herford on the basis of age. Dearman's position was filled by a younger, less qualified employee. Dearman was found to be more qualified for other positions in his department than the employees who had been retained to occupy those positions. Herford was fired while younger, less qualified employees were retained. Herford's former supervisor told him in the presence of witnesses that he had been terminated because he was too old. The compliance officer then told Sun that its treatment of Herford and Dearman violated the Act and that both men were entitled to reinstatement and back pay. Sun did not deny the Secretary's allegations. After reiterating its denial of discriminatory intent, however, Sun representatives stated that they could not settle with Dearman and Herford because doing so would invite claims from many other former employees. As a result, the compliance officer indicated that the case file would be forwarded to the Solicitor's office for appropriate legal action.
 
 
 6
 The file including the officer's report was submitted to the Solicitor's Dallas office on May 11, 1973, where it was analyzed further. Six days later, the file was forwarded to the Solicitor's central office in Washington, D. C., for independent review in accordance with department policy for cases involving national corporations. The file was returned fifteen months later with instructions to expand the investigation to include all employees over 40 years of age terminated by Sun in 1972. On September 10, 1974, the compliance officer again met with a Sun representative. The officer explained the expansion of the investigation and secured Sun's cooperation in supplying necessary information such as terminated employees' names, ages and personnel records.
 
 
 7
 During the next month, the Secretary's representatives, while remaining in contact with Sun, interviewed Sun employees and examined the personnel records of all the terminated employees. Based on this information, the Secretary compiled a statistical analysis which demonstrated that more than 60% Of the employees terminated were over 50, although before the reorganization only 29% Of Sun's employees were in this age group. Twenty-four percent of Sun's employees over 60 were terminated, although employees over 60 comprised only 3% Of Sun's total work force. Though 33.5% Of all employees were under 40, only 15% Of that age group were terminated in 1972.
 
 
 8
 These findings were taken to Sun on October 17, 1974. The Secretary's representatives then stated that based on these statistics and on a careful inquiry into the cases of Dearman, Herford and a number of other individuals, they had concluded that in the 1972 terminations Sun, in violation of the ADEA's requirements, had engaged in an unlawful "pattern and practice of selecting employees over forty for termination because of their ages while retaining younger workers whenever possible." The Secretary contended that the wrongfully terminated employees must be reinstated, paid back wages, or given relief through a combination of both. Sun denied the relevance of the Secretary's statistics, insisting that termination decisions had been made individually based on merit. Sun stated that it would only consider individual settlements in cases in which the Secretary proved to its satisfaction that a specific individual was a victim of discrimination. The Secretary's earlier findings with respect to Dearman and Herford did not satisfy Sun's desired proof. Sun did not, however, attempt to produce evidence indicating that any of the individuals the Secretary found entitled to relief had not in fact been victims of discrimination. The Secretary's representatives warned that litigation would be commenced if Sun refused to conciliate and to waive the statute of limitations, which was to expire within six weeks for some members of the class. Sun again refused to attempt to conciliate, explaining that payments made pursuant to a conciliation agreement, unlike a payment of a judgment, could not be justified to Sun's stockholders. A few weeks later the Secretary brought this action.
 
 THE SUFFICIENCY OF CONCILIATION EFFORTS
 
 9
 In pertinent part 29 U.S.C. § 626(b) provides,
 
 
 10
 Before instituting any action under this section, the Secretary shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this (Act) through informal methods of conciliation, conference, and persuasion.
 
 
 11
 We must determine whether the Secretary satisfied this requirement.
 
 
 12
 Because conciliation requires flexibility as well as responsiveness to the other participants' attitudes and to the evolving positions they take in discussions, Brennan v. Ace Hardware Corp., 495 F.2d 368, 376 (8th Cir. 1974), what constitutes an "attempt . . . to effect voluntary compliance" will necessarily differ from case to case. Nevertheless, we have no difficulty concluding that on the facts of this case the Secretary satisfied his obligation to attempt conciliation. The court below erred in concluding otherwise.
 
 
 13
 Relying on Dunlop v. Resource Sciences Corp., 410 F.Supp. 836 (N.D.Okl.1976), the district court recognized a two-step test to be used in evaluating the Secretary's efforts to comply with his statutory duty. First, he must investigate the employer's practices to determine whether a violation has taken place. Second, the Secretary must attempt to achieve voluntary compliance. The second task was held to involve (1) informing the violator of ways in which he can bring himself into compliance with the Act, (2) telling him that terminated employees may recover back pay, (3) notifying him that the Department may institute legal action, and (4) assuring him that he may respond to the violations, in light of the possible remedy.
 
 
 14
 The trial court's basic error rests in its too narrow and abstract view of conciliation under the Dunlop test. Rather than evaluating the Secretary's efforts, including investigation, in light of the conciliation that actually occurred, the trial court imposed inflexible requirements unsupported by the statute. Under the trial court's standard, the Secretary must first determine the exact extent of each violation, then separately document all 121 of the individual cases for the discriminating employer. This holding seriously distorts the nature of conciliation, the appropriate manner in which proof should be viewed in the conciliation of large-scale discrimination claims and the Secretary's role in resolving such claims. Further, this test forces the courts to engage in a standardless and burdensome review of the Secretary's decisions as to the amount of evidence that must be presented to a putative discriminator.
 
 
 15
 An independent requirement of exhaustive investigations would reward the employer who discriminates on a large scale and undermine the legislative goal of obtaining voluntary compliance in these cases. The large scale discriminator would present the Secretary with an onerous and costly burden of investigation if the Secretary were required to prove each individual case of discrimination. Because a limited number of investigators is available, such a burden would frustrate the Secretary's ability to attempt conciliation in many cases. See Marshall v. Hartford Fire Insurance Co., 78 F.R.D. 97 (D.Conn.1978). Further, unnecessarily thorough investigations of individual cases would tend to transform the conciliation process into something contrary to congressional intent. See S.Rep. No. 95-493, 95th Cong., 2d Sess. 13, Reprinted in (1978) U.S.Code Cong. & Admin. News, pp. 504, 516. Not only would the process become too formalized and unduly prolonged, but its focus would be directed away from voluntary compliance with the law to endless and irreconcilable bickering about, for example, the meaning that should be ascribed to an inadvertent statement made by a supervisor to a terminated employee. Such a situation would not only be repugnant to congressional intent, See H.Rep.No. 805, 90th Cong., 1st Sess., Reprinted in (1967) U.S.Code Cong. & Admin. News, pp. 2213, 2218, but would also be extremely difficult for courts to review.
 
 
 16
 Requiring the Secretary to prove each specific instance of age discrimination with great particularity also misconstrues Congress' understanding of the Secretary's role in combatting age discrimination. The Secretary champions the public's interest in the eradication of age discrimination in our nation. The evil is often a public wrong, Cf., e. g., International Brotherhood of Teamsters v. United States, 431 U.S. 324, 336 n. 16, 97 S.Ct. 1843, 1855 n. 16, 52 L.Ed.2d 396 (1977) (racial discrimination), making the Secretary more than a mere proxy for each victim of age discrimination. The Secretary, therefore, is not in the shoes of 121 employees; his efforts in conciliation need not equal the sum of the efforts of 121 employees proceeding separately against Sun. Cf. EEOC v. General Electric Co., 532 F.2d 359 (4th Cir. 1976) (Title VII standing).
 
 
 17
 Further, the district court's approach focuses on a conciliator acting alone rather than the conciliator's conduct in the process he institutes. Conciliation is not a one-way street. It is an attempt to reach a reasonable, voluntary and mutual understanding. Because conciliation involves at least two parties, we must evaluate one party's efforts with an eye to the conduct of the other party. As the court noted in Marshall v. Hartford Fire Insurance Co., 78 F.R.D. 97 at 103, "(T)he degree of effort required of the Secretary depends on the employer's reaction to his approaches." Thus to fulfill his duty to act reasonably under the circumstances the Secretary's conduct when dealing with a repentant wrongdoer will differ from his conduct with an intransigent one. The district court ignored this distinction in requiring the Secretary to produce evidence of the "exact extent" of any violations regardless of the particular circumstances of the case.
 
 
 18
 As a heuristic device, we evaluate the adequacy of the Secretary's efforts by dividing them into three parts. First, what did the Secretary originally do? Basically, he must notify the violator of the four points mentioned in the district court's opinion. Cf. Brennan v. Ace Hardware Corp.,495 F.2d at 374-76 (listing essentially the same information in three points). He must also present a reasonable showing of discrimination, but we find no statutory basis for requiring that he produce as much evidence as he would need to prevail at trial, to satisfy the alleged wrongdoer or to meet some nonexistent burden of proof. The Secretary must of course investigate the allegations of terminated employees; otherwise conciliation would not be meaningful. To acquire evidence the Secretary must necessarily undertake some independent investigation or verification of evidence supplied by others; however, investigation is not a separate requirement of the Act. The scope and degree of his investigation may be influenced by the conciliation process.
 
 
 19
 Second, how did the alleged wrongdoer respond? Did he attempt to challenge or to rebut the evidence, or was he passive or, even, intransigent? If an impasse is reached, who was at fault?
 
 
 20
 Third, how did the Secretary respond to the action or inaction of the alleged wrongdoer? Did he seize the opportunity to go forward, or did he refuse to address counter-evidence? Conciliation, though an informal process, presupposes that the participants act in a reasonable and responsive manner. The reasonableness of the Secretary's conduct under the circumstances is the ultimate test of the adequacy of his conciliation efforts.
 
 
 21
 In this case, the Secretary did a more than adequate job of attempting to secure voluntary compliance with the Act. After making the four requisite disclosures, the Secretary presented evidence of age discrimination that was clearly sufficient under the circumstances. Sun does not dispute that the Secretary's investigation of the class of terminated Sun employees revealed an overwhelming disproportion in the percentage of older employees terminated compared with the percentage of younger employees terminated.[2] Evidence also showed that in two specific cases the terminated older employees were more qualified than the younger employees Sun retained. Through the use of statistics and two illustrative cases, we find that the Secretary's investigations have produced a prima facie case of age discrimination against a well-defined class of 121 Sun employees between the ages of 40 and 65 during its 1972 reorganization.[3]
 
 
 22
 Sun's conduct precluded meaningful conciliation despite the Secretary's efforts. Sun officials never attempted to rebut any of the Secretary's charges except to plead a lack of discriminatory intent or to deny any wrongdoing.[4] Sun could have countered the Secretary's allegations in a number of ways. E. g., 29 U.S.C. § 623(f)(1). Instead, Sun admitted that "potential for future growth" was a factor in its firing decisions and that even though its conduct with respect to Herford and Dearman looked bad, settlement of their cases was impossible because it would invite claims from other former Sun employees. Sun stated, moreover, that it would not consider a remedy for a terminated employee unless the Secretary first proved to Sun's satisfaction that discrimination had occurred. This statement, however, must be read in light of Sun's management assessment of its shareholders' attitudes.
 
 
 23
 Having made out a prima facie case showing a pattern and practice of age discrimination and confronted with an employer who refuses to rebut or to discuss the evidence, the Secretary need not conduct further investigations. The Secretary need never prove age discrimination to the employer's satisfaction. In light of Sun's generalized denials and its unwillingness to engage in a meaningful colloquy on the Secretary's allegations,[5] the Secretary satisfied his statutory duty of attempting conciliation by meeting with Sun, presenting it with the result of his investigations, informing Sun of the law and requesting that Sun voluntarily take the appropriate remedial action with respect to the wrongfully terminated employees. Through Sun's intransigence,[6] the conciliation process reached an impasse. Further conciliation efforts would have been futile and legally unnecessary.[7] The Secretary need not have done more.
 
 
 24
 The trial court demanded too much of the Secretary.[8] He must only conduct investigations sufficient to give him a reasonable basis on which to conclude that the Act was violated. He may fulfill his statutorily required duty of conciliation by outlining this basis to the employer, giving him an opportunity to comply voluntarily with the law, and acting in a flexible and responsive way to the reasonable attitudes of the employer.
 
 THE INEXCUSABLE DELAY
 
 25
 The fact that the investigation file in this case remained with the Secretary's attorneys for fifteen months before being returned to the compliance officer with instructions to expand the scope of the investigation was described by the district court as "egregious," "astonishing" and "inexcusable." These characterizations are not without foundation. We disagree, however, with the court's finding that this lengthy hiatus indicates that the Secretary failed to take strong affirmative steps toward effecting compliance. As we have indicated, such a finding is wholly beside the point in an ADEA case. Accord Marshall v. Hartford Fire Insurance Co., 78 F.R.D. 97 (reasonable, not exhaustive, action required by the Act). The crucial factors are the attitudes of the parties and their respective contributions to the discussions, not elapsed time or strength of actions taken. Delays in investigating claims, when no prejudice to defendants results, Cf. EEOC v. Exchange Security Bank, 529 F.2d 1214, 1216-1217 (5th Cir. 1976) (construing 5 U.S.C. § 706 in 42 U.S.C. § 2000e-9 action), and when not extended beyond the limitations period, are not relevant to the question of adequate conciliation. As the district court noted, "If Congress had thought a time lag of nineteen months to be unfair, it could have shortened the time for bringing an action under the Act." Since the suit was brought within the Act's limitation period and defendants failed to show prejudice resulting from the Secretary's delay, we find that the Secretary's delay does not negate his otherwise more than adequate efforts in the conciliation process.[9] A contrary holding would ignore both the congressional recognition of the great amount of time often needed to conciliate these claims, and its intent to enable the courts to reach the merits of the cases of aggrieved individuals. See S.Rep.No. 95-493, 95th Cong., 2d Sess. 12-13, Reprinted in (1978) U.S.Code Cong. & Admin. News, pp. 504, 515-16.
 
 THE RESULT
 
 26
 The dismissal of this suit with respect to all but two of the terminated employees over forty years of age is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion. The district court's decision with respect to Herford and Dearman is affirmed.
 
 
 27
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 
 
 
 *
 District Judge of the Northern District of Alabama sitting by designation
 
 
 [1]
 This court granted the Equal Employment Opportunity Commission's motion to be substituted for Secretary Marshall as appellant in this case. Under Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19807 (1978) and Executive Order No. 12144, 44 Fed.Reg. 37193 (1979), Congress and the President transferred the Secretary's enforcement responsibilities under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-634 to the EEOC on July 1, 1979
 
 
 [2]
 Drawing on an analogous case decided by the Supreme Court, we find that when the Secretary has come forward in the conciliation process with statistical evidence showing a pattern or practice of age discrimination, the employer's position changes. The Secretary's evidence supports an inference that each class member is entitled to full individual relief
 The employer cannot, therefore, claim that there is no reason to believe that its individual employment decisions were discriminatorily based; it has already been shown to have maintained a policy of discriminatory decisionmaking.
 The proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy.
 International Bhd. of Teamsters v. United States, 431 U.S. 324, 362, 97 S.Ct. 1843, 1868, 52 L.Ed.2d 396 (1977). Accord, Franks v. Bowman Transp. Co., 424 U.S. 747, 772-73, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); Baxter v. Savannah Sugar Ref. Corp., 495 F.2d 437, 443 (5th Cir.), Cert. denied, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974).
 The law of this circuit is clear on the role and adequacy of statistical analyses in proving the existence of discrimination at trial: although "lopsided ratios" are not conclusive proof of discrimination, "they do present a Prima facie case" and the "onus of going forward with the evidence and the burden . . . is thus on (the employer)." United States v. Hayes Int'l Corp., 456 F.2d 112, 120 (5th Cir. 1972), Modified, Marshall v. Westinghouse Elec. Corp., 582 F.2d 966, 967 (5th Cir. 1978) (burden of production, not burden of persuasion, shifts to the employer) (citing Hodgson v. First Federal Savings & Loan Ass'n, 455 F.2d 818, 822 (5th Cir. 1972)). See, e. g., Watkins v. Scott Paper Co., 530 F.2d 1159, 1191-1192 (5th Cir.), Cert. denied, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976); Robinson v. City of Dallas, 514 F.2d 1271, 1273 (5th Cir. 1975); Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 225 n. 34 (5th Cir. 1974), Cert. denied, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). Our rule accords with that of the Supreme Court. See, e. g., International Bhd. of Teamsters v. United States, 431 U.S. at 362, 97 S.Ct. at 1868.
 
 
 [3]
 The Equal Employment Advisory Council suggests in its Amicus curiae brief that the Secretary's statistics show no discriminatory impact on 40-49-year-old employees. This observation is beside the point. The Secretary may have concluded from the existence of age discrimination in general that the 40-49-year-old employees that were in fact terminated were discharged because of age. The correctness of that possible conclusion is not before us. We review the conciliation process as it actually occurred. Perhaps our conclusions about Sun's conduct would be different had it raised the EEAC'S point during conciliation
 
 
 [4]
 Even if Sun had rebutted the Secretary's allegations of age discrimination with respect to a few specific employees, that rebuttal would not have negated the Secretary's proof of class-wide discrimination and thus would not have removed the impasse in conciliation. Nonstatistical evidence indicating the absence of discrimination in particular cases does not refute a clear statistical pattern of discrimination. See United States v. Jacksonville Terminal Co., 451 F.2d 418, 442 (5th Cir. 1971), Cert. denied 406 U.S 906, 92 S.Ct. 1607, 31 L.Ed.2d 815 (1972). Our understanding of the irrelevance of specific cases to statistical proof of discrimination is embodied in our approval of a bifurcated trial in discrimination cases. In a bifurcated action the wrong to the class is adjudicated prior to a consideration of individual circumstances
 At the initial, "liability" stage of a pattern or practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed. . . .
 . . . Without any further evidence from the Government, a court's finding of a pattern or practice justifies an award of prospective relief.
 International Bhd. of Teamsters v. United States, 431 U.S. at 360-361, 97 S.Ct. at 1867. See Sagers v. Yellow Freight System, Inc., 529 F.2d 721, 733-34 (5th Cir. 1976); Baxter v. Savannah Sugar Ref. Corp., 495 F.2d at 443-45.
 
 
 [5]
 As we noted in the analogous Title VII context, Compare 42 U.S.C. § 2000e-5(b) With 29 U.S.C. § 626(b),
 It would be wasteful, if not vain, (to attempt to conciliate the claims of) numerous employees, all with the same grievance . . . . If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful.
 Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 498 (5th Cir. 1968). See also Albemarle Paper Co. v. Moody, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).
 
 
 [6]
 The Secretary presented substantial evidence of discrimination and, indeed, made out a prima facie case. Sun did not rebut the Secretary's showing of discrimination merely by dismissing the Secretary's statistical analysis as irrelevant and denying without evidence its discriminatory intent. International Bhd. of Teamsters v. United States, 431 U.S. at 342 n. 24, 97 S.Ct. at 1858 n. 24; Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); Watkins v. Scott Paper Co., 530 F.2d at 1192-94. Accordingly, Sun is responsible for the impasse in conciliation and nothing more could reasonably be expected from the Secretary
 
 
 [7]
 The Secretary's insistence that Sun waive the limitations period as a condition to further investigations and negotiations does not establish that the Secretary is responsible for the impasse in conciliation. The Secretary's willingness to do further investigative work suggests his commitment to the success of the conciliation process as a mechanism for eradicating age discrimination. Recent amendments to ADEA provide for the tolling of the statute of limitations for up to one year during the conciliation period. 29 U.S.C. § 626(e)(2)
 
 
 [8]
 Had the Secretary tried, but failed to satisfy the Act's conciliation requirements the district court would still have erred in concluding that, by that omission, the Secretary failed to meet the jurisdictional prerequisite of 29 U.S.C. § 626(b). The Act's conciliation requirement is not jurisdictional. Brennan v. Ace Hardware Corp., 495 F.2d at 376. The legislative history accompanying the 1978 amendments to the ADEA rejects any attempt to categorize conciliation as jurisdictional. S.Rep.No. 95-493, 95th Cong., 2d Sess. 13, Reprinted in (1978) U.S.Code Cong. & Admin. News, pp. 504, 516; H.R.Conf.Rep.No. 95-950, 95th Cong., 2d Sess. 13, Reprinted in (1978) U.S.Code Cong. & Admin. News, pp. 528, 534. Because, in the 1978 amendments, Congress explicitly attempted to resolve the conundrums courts have created in applying the conciliation provision and the 180-day filing period, See Mizuguchi v. Molokai Elec. Co., 411 F.Supp. 590 (D.Hawaii 1976) ("murky jurisdictional waters"), we see no reason to second guess its intent. We are not substituting the 1978 legislative history for that of 1967, but effecting the 1978 will of Congress to correct the problems created in 1967. See Oscar Mayer & Co. v. Evans, --- U.S. ----, ----, 99 S.Ct. 2066, 2072-73, 60 L.Ed.2d 609 (1979)
 We do not circumvent our earlier decision in McArthur v. Southern Airways, Inc., 569 F.2d 276 (5th Cir. 1978) (en banc). In McArthur this court held that a timely filing with the EEOC was a jurisdictional prerequisite to employment discrimination litigation under Title VII. Contra, Bethel v. Jefferson, 189 U.S.App.D.C. 108, 118, 589 F.2d 631, 641 n. 64 (D.C.Cir. 1978). As we noted above, Title VII and the ADEA are similar in many important respects, yet for either of two independent reasons our decision today is not inconsistent with our McArthur holding.
 The legislative history of ADEA, unlike that of Title VII, suggests strongly that conciliation is not a jurisdictional prerequisite to judicial relief. See, e. g., S.Rep.No. 95-493, 95th Cong., 2d Sess. 13, Reprinted in (1978) U.S.Code Cong. & Admin. News, pp. 504, 516. Cf. Oscar Mayer & Co. v. Evans, --- U.S. at ----, 99 S.Ct. at 2073 (§ 14(b) of the Act). Legislative observations about the conciliation requirement in 1978 clarified an earlier ambiguity by specifically endorsing the Brennan decision, which stated that conciliation as a condition precedent or prerequisite to suit is not jurisdictional.
 Various courts have held that the failure to comply with the conciliation requirement in section 7(b) requires dismissal of the lawsuit. Some courts have gone so far as to say that conciliation is a "jurisdictional prerequisite" to bringing a lawsuit under the Act. (See Dunlop v. Resources Sciences Corp., 410 F.Supp. 836, 843 (N.D.Okl.1976); Usery v. Sun Oil Company (Delaware), 423 F.Supp. 125, 128 (N.D.Tex.1976).
 It is the committee's intent that the conciliation requirement in section 7(b) should not be so rigidly applied. In Brennan v. Ace Hardware Corp., 495 F.2d 368 (C.A. 8, 1974), the court reflected a proper understanding of the conciliation requirement in rejecting the employer's argument that the statutory directive is a "condition precedent to the court entertaining jurisdiction of the legal action." In that case the court correctly noted that section 7(b) grants to district courts the equitable discretion to stay lawsuits pending before them in order to permit conciliation to be completed before the lawsuit continues. The claim of discrimination ought to be decided on the merits through litigation in the event the conciliation process fails.
 In order to assure that such a resolution on the merits will occur, the (new amendments to the ADEA provide) that the statute of limitations will be tolled during conciliation carried out pursuant to section 7(b).
 S.Rep.No. 95-493, 95th Cong., 2d Sess. 13, Reprinted in (1978) U.S.Code Cong. & Admin. News, pp. 504, 516. Accord, H.R.Conf.Rep.No. 95-950, 95th Cong, 2d Sess. 13, Reprinted in (1978) U.S.Code Cong. & Admin. News, pp. 528, 534.
 Even if the conciliation requirement were jurisdictional, our decision today could be reconciled to McArthur. As our holding in Chappell v. Emco Mach. Works Co., 601 F.2d 1295 (5th Cir. 1979) makes clear, "jurisdiction" was ascribed a special meaning in McArthur. See also McArthur v. Southern Airways, Inc., 569 F.2d at 278 (Rubin, J., dissenting). Timely filing is not jurisdictional in the same sense as is the amount in controversy in diversity actions, Chappell v. Emco Mach. Works Co., 601 F.2d at 1298; See Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir. 1975), but is subject to equitable modification by the district court in its § 626(b) discretion. See Chappell v. Emco Mach. Works Co., 601 F.2d at 1301. Equitable modification to confer jurisdiction in its special McArthur sense may well be appropriate when the Secretary files suit without first attempting conciliation. Since the Secretary's action bars a private suit by the discriminated employee, 29 U.S.C. § 626(c), dismissing the Secretary's suit would condition the employee's right on "events beyond his control which are not spelled out in the statute." Franks v. Bowman Transp. Co., 495 F.2d 398, 404 (5th Cir. 1974), Rev'd in part on other grounds, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). See also H.R.Conf.Rep.No. 95-950, 95th Cong., 2d Sess. 13, Reprinted in (1978) U.S.Code Cong. & Admin. News, pp. 528, 534.
 If a district court finds that the Secretary has not attempted conciliation sufficiently to comply with the Act, then the district court may stay proceedings to permit the future efforts that it deems necessary. Marshall v. Sun Oil Co., 592 F.2d 563, 566 (10th Cir. 1979); H.R.Conf.Rep.No. 95-950, 95th Cong., 2d Sess. 13, Reprinted in (1978) U.S.Code Cong. & Admin. News, pp. 528, 534. Cf. Oscar Mayer & Co. v. Evans, --- U.S. at ----, 99 S.Ct. at 2076 (federal ADEA suit held in abeyance while state complaint processed). Contrary action would conflict with the equitable character of the suit and the remedial and humanitarian nature of the act. Marshall v. Sun Oil Co., 592 F.2d at 566. Alternative conduct would also be at odds with the reality of the situation: wronged employees who have no control over the conciliation process would be barred from relief by the actions of either a recalcitrant employer or a lax bureaucracy. See, e. g., 29 U.S.C. § 626(c) (barring employee's right to sue if the Secretary files an action in his or her behalf).
 
 
 [9]
 Even if the Secretary's efforts had been inadequate, placing the consequences of delay "upon wronged employees to the benefit of wrongdoing employers" would create manifest injustice. NLRB v. J. H. Rutter-Rex Mfg. Co., 396 U.S. 258, 265, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969). See Marshall v. Sun Oil Co., 592 F.2d 563, 566 (10th Cir. 1979). Cf. NLRB v. Katz, 369 U.S. 736, 748 n. 16, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962) (refusing to dismiss proceedings because of long delays before the NLRB). Ladening the Act with requirements "which may inhibit the review of claims of employment discrimination in the federal courts" is simply inappropriate. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798-99, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). For references to an analogous result under Title VII, see Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); McDonnell Douglas Corp. v. Green, 411 U.S. at 798-800, 93 S.Ct. 1817; EEOC v. Zia Co., 582 F.2d 527, 532-33 (10th Cir. 1978)