### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,

v.

### PRUDENTIAL FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellant.

**Nos. 82–2444, 83–1073.**

United States Court of Appeals, Tenth Circuit.

Aug. 7, 1984.

Clark Waddoups, Salt Lake City, Utah (Stephen G. Crockett and Steven D. Smith, Salt Lake City, Utah, with him on briefs), of Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, for defendant-appellant.

Jeffrey C. Bannon, Washington, D.C. (David L. Slate, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel and Vella M. Fink, Asst. Gen. Counsel with him on briefs), E.E.O.C., Washington, D.C., for plaintiff-appellee.

Before BARRETT, DOYLE, and SEY-MOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) brought this action against Prudential Federal Savings and Loan (Prudential) alleging that Prudential violated the Age Discrimination in Employment Act (ADEA or the Act), 29 U.S.C. §§ 621 *et seq.* (1982), when it discharged six employees and demoted a seventh. The case was tried to a jury, which found that one employee, Douglas Tanner, had been illegally terminated because of his age and awarded him $34,200 in past lost wages and benefits.[1] The jury found that the violation had not been willful and accordingly did not award liquidated damages. As additional equitable relief, the trial judge granted Tanner $17,000 in lost future retirement and pension benefits in lieu of reinstatement.

Both parties have appealed. The EEOC contends that the district court erroneously instructed the jury on the meaning of "willful" as used in the section of the ADEA

---

**1.** The jury found in favor of Prudential with respect to the six other charging parties. The EEOC has not challenged these determinations on appeal.

authorizing the award of liquidated damages for willful violations. In its cross-appeal Prudential asserts that: (1) the district court should have dismissed the action because the EEOC failed to conciliate as required by the ADEA; (2) the court erroneously failed to instruct the jury that the EEOC was required to prove pretext; (3) the evidence was insufficient to support the verdict in favor of Tanner; and (4) the court's award of future damages was erroneous. We affirm in part, reverse in part, and remand for further proceedings.

The facts giving rise to this litigation are briefly as follows. In the late 1970's economic conditions had an adverse impact on the operations of the savings and loan industry. In response, Prudential instituted a reduction in force designed to eliminate all non-essential positions and personnel. Douglas Tanner was one of several employees involuntarily terminated under the reduction in force. Tanner was fifty-four when he was discharged, and he had been with Prudential twenty-seven years. At the time of his termination he was an Acquired Property Manager, responsible for foreclosing on defaulted real estate loans and for managing and selling foreclosed properties. After his termination, two or three other employees performed his work along with their own duties. Prudential did not offer Tanner a position elsewhere in the company.

## I.

### CONCILIATION

■ Prudential vigorously argues on appeal that the EEOC failed to satisfy its statutory duty to conciliate in good faith and consequently the trial court erred in failing to dismiss the action on this ground. The ADEA states that "[b]efore instituting any action under this section, the [EEOC] shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b). This jurisdictional provision embodies "the congres-

sional intent that enforcement be effected wherever possible without resorting to formal litigation." *Marshall v. Sun Oil Co.* 592 F.2d 563, 565 (10th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979) (*Sun Oil I*).

This court has recognized that the "ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment." *Dartt v. Shell Oil Co.* 539 F.2d 1256, 1260 (10th Cir.1976), *aff'd per curiam by an equally divided court,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977). Accordingly, we have refused to dismiss cases where the EEOC failed to exhaust fully its duty to conciliate because to do so would severely hamper enforcement of the ADEA and would be "incompatible with the humanitarian nature of the Act." *Sun Oil I,* 592 F.2d at 566. We have concluded instead that when the EEOC initially makes a sufficient albeit limited effort to conciliate, the minimal jurisdictional requirement of the Act is satisfied and the action is therefore properly before the court. *Id.* Once this initial effort is made, "if the district court finds that further conciliation efforts are required the proper course is to stay proceedings until such informal conciliation can be concluded." *Id.*

Courts have recognized that "[b]ecause conciliation involves at least two parties, we must evaluate one party's efforts with an eye to the conduct of the other party." *Marshall v. Sun Oil Co.,* 605 F.2d 1331, 1335 (5th Cir.1979) (*Sun Oil II*); *see also Marshall v. Hartford Fire Insurance Co.,* 78 F.R.D. 97, 103 (D.Conn.1978). Conciliation is thus a flexible and responsive process which necessarily differs from case to case. The EEOC may make a sufficient initial effort without undertaking exhaustive investigations or proving discrimination to the employer's satisfaction, *Sun Oil II,* 605 F.2d at 1334–35, so long as it makes a sincere and reasonable effort to negotiate by providing the defendant an "adequate opportunity to respond to all charges and

negotiate possible settlements." *Hartford Fire Insurance Co.*, 78 F.R.D. at 107.

In this case the EEOC informed Prudential of the identity of the charging parties, the specific allegations of misconduct, and the remedy sought by each party, and on several occasions it invited conciliation. The record reveals a series of overtures by the EEOC to which Prudential made no meaningful response. Prudential obviously was aware both that litigation could follow failure to conciliate and of the requirements of the Act. We conclude that the EEOC's initial effort was sufficient under *Sun Oil I*, 592 F.2d at 566–67, particularly in view of Prudential's insistent refusal to undertake any significant dialogue, its outright rejection of the EEOC's initial settlement proposals, and its refusal to offer any serious counterproposals. The trial court properly refused to dismiss the action because, under the circumstances, Prudential was given a reasonable opportunity before suit was filed to respond and negotiate.

In line with *Sun Oil I*, the court exercised its discretion to stay the suit forty-five days to provide the parties an additional opportunity to conduct conciliation. The conciliation proceedings were recorded at Prudential's insistence. The trial court found that the record of these talks was relevant to Prudential's claim that the EEOC had failed initially to negotiate in good faith because this record revealed the pre-filing conciliation in a new light. Based on Prudential's conduct at the recorded meeting, the court observed that the "maneuvering in the correspondence that was submitted by Prudential" regarding pretrial conciliation was misleading. Rec., supp. vol. I, at 19–20. The court noted "Prudential's almost intransigent resistance to any good faith negotiation and the efforts of the Commission attorney to at least open the door for meaningful conciliation." *Id.* at 19. The court justifiably concluded that Prudential's conduct at this meeting was an accurate reflection of its attitude in the earlier conciliation, and held that Prudential was in no position to object to a lack of good faith conciliation by the EEOC. We agree with this conclusion.

## II.

## THE PROPOSED PRETEXT INSTRUCTION

■ Prudential requested the court to instruct the jury that if it found Prudential had offered reasonable factors other than age for the termination or demotion of the complaining employees, the jury had to find for Prudential unless it found that the EEOC had proven that Prudential's explanation for the termination or demotion was a pretext for age discrimination. The court refused "on the theory that even though the jury finds that the explanation of financial difficulties and the necessity for reorganization or other explanations were not mere pretext, if they also find that age discrimination was a determinative factor, the jury could not be peremptorily instructed to decide for the defendant." Rec., vol. VIII, at 956.

■ In reviewing Prudential's allegation of error we must consider the instructions given as a whole. *McGrath v. Wallace Murray Corp.*, 496 F.2d 299, 301 (10th Cir.1974). "[N]o particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law." *Perrell v. Financeamerica Corp.*, 726 F.2d 654, 656 (10th Cir.1984); *see also Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1181 (6th Cir.1983).

In discussing the proper instructions in an ADEA action, we recently stated that

"The essence of the correct formulation of the standard of proof is that it requires the jury to focus on the effect of the factor of age. The jury must understand that it is not enough that age discrimination figure in the decision to demote or discharge; age must 'make a difference' between termination and retention of the employee in the sense that, 'but for' the factor of age discrimination, the employee would not have been adversely affected."

*Perrell*, 726 F.2d at 656. In the instant case the jury was properly and thoroughly

instructed that the EEOC had to prove that "the age of the employee in question was a determinative factor in defendant's decision to discharge him. That is ... but for his age, he would not have been so treated." Rec., vol. XV, at 1111. We conclude that the court's instructions accurately set out the relevant legal standards.

■ Moreover, we agree with the trial judge's reason for refusing Prudential's pretext instruction. An ADEA plaintiff is not required to show that age was the sole motivating factor in the employment decision. *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 82 (2d Cir.1983); *Blackwell*, 696 F.2d at 1181; *Cancellier v. Federated Department Stores*, 672 F.2d 1312, 1315–16 (9th Cir.), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *Smithers v. Bailar*, 629 F.2d 892, 898 (3rd Cir.1980). Thus a plaintiff need not prove that the reasons offered by the defendant are false if he proves that age was also a reason, and that age was the factor that made a difference. *Hagelthorn*, 710 F.2d at 82; *see Perrell*, 726 F.2d at 656. The instruction requested by Prudential could have misled the jury into thinking that even though it found age to be the determinative factor, it nonetheless would be required to return a verdict for Prudential unless the EEOC also proved that Prudential's reasons were invalid. Consequently, the trial court properly rejected it.

### III.

### SUFFICIENCY OF THE EVIDENCE

■ Prudential argues that the evidence was insufficient to support the jury verdict in favor of Tanner. A judgment notwithstanding the verdict is appropriate only when "the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made." *Symons v. Mueller Co.*, 493 F.2d 972, 976 (10th Cir.1974). In making this evaluation, the court must construe the evidence and inferences most favorably to the nonmoving party, *id.*, and "cannot weigh the evidence, consider the credibility of witnesses or sub-

stitute its judgment for that of the jury." *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 680 n. 2 (10th Cir.1981). "[S]ince the grant of such a motion deprives the non-moving party of a determination of the facts by a jury, judgment notwithstanding the verdict should be cautiously and sparingly granted." *Id.* at 680. Upon review of the record under the above standards, we conclude that a judgment notwithstanding the verdict is unwarranted.

When both parties have fully presented their evidence, the "central question is whether plaintiff has presented sufficient evidence to permit a reasonable fact-finder to conclude that age was a determinative factor in the employer's decision." *Hagelthorn*, 710 F.2d at 81; *see also United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). In this case the EEOC offered statistical evidence of a significant association between age and discharge, as well as evidence of statements made by Prudential's president and other management personnel, which the jury reasonably could construe as suggesting that age played a determinative role in the company's selection of employees for termination. In addition, the EEOC's evidence tended to prove that real estate foreclosure activity was substantial at this time due to the economic climate, and that several younger employees carried on Tanner's work after his departure. Although this evidence was not undisputed, it obviously was accepted by the jury and clearly is sufficient to allow a reasonable factfinder to decide that age was a determinative factor in Tanner's discharge.

### IV.

### FUTURE DAMAGES

■ In its entry of judgment on the jury verdict, the trial court awarded Tanner $17,000 "as lost retirement and pension benefits accruing through normal retirement, in lieu of reinstatement." Rec., vol. II, at 477. On appeal, Prudential contends that an award of future damages is not

authorized by the ADEA, and that even if such damages could be awarded, they were improper in this case because Tanner did not sincerely request reinstatement.

The ADEA incorporates the remedies of the Fair Labor Standards Act (FLSA) as follows:

"The provisions of [the ADEA] shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of [the FLSA], and subsection (c) of this section.... *Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title....*"

29 U.S.C. § 626(b) (emphasis added). The FLSA provides the district courts with power to restrain violations of the act. *Id.* § 217. The most pertinent provision, section 216(b), provides:

"Any employer who violates the provisions of [the Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

*Id.* § 216(b). However, the ADEA makes a significant addition to the FLSA remedies by providing that

"In any action brought to enforce this chapter the court shall have jurisdiction to grant such *legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation* judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section."

*Id.* § 626(b) (emphasis added).

The courts disagree on whether future damages in lieu of reinstatement are available under the ADEA. *See, e.g., O'Donnell v. Georgia Osteopathic Hospital, Inc.,* 574 F.Supp. 214, 216–19 (N.D.Ga.1982) (dis-cussing cases); *Koyen v. Consolidated Edison Co.,* 560 F.Supp. 1161, 1167 & n. 33 (S.D.N.Y.1983) (citing cases). The Eighth and Ninth Circuits have held that such damages may be awarded under certain circumstances. *See Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1100 (8th Cir. 1982); *Cancellier,* 672 F.2d at 1319. The First Circuit has stated that an ADEA plaintiff cannot recover damages for future economic loss. *See Kolb v. Goldring, Inc.,* 694 F.2d 869, 874 n. 4 (1st Cir.1982).

This court has recently reviewed a case in which the trial court had awarded future damages in lieu of reinstatement. *See Blim v. Western Electric Co.,* 731 F.2d 1473, 1478–79 (10th Cir.1984). We there recognized the split in the circuits on this issue, but a majority of the panel held that it did not need to resolve the question. *Id.* at 1479. Instead, the majority assumed without deciding that front pay is available under the ADEA, but held that under the circumstances of that case the trial court should have ordered repromotion rather than front pay. Chief Judge Seth, in dissent, would have decided the issue and would have held that front pay is not a remedy contemplated by the ADEA. *Id.* at 1481. We are directly faced with the question in this case.

Although the ADEA provides that violations of the Act generally are to be treated as violations of the Fair Labor Standards Act, the ADEA only selectively incorporates FLSA sections. At the same time, as we have pointed out, the ADEA contains additional remedial provisions not found in the FLSA. "[I]n enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation." *Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978).

In a thorough and careful analysis of the question of damages in lieu of reinstatement, the court in *Koyen* concluded:

"The manifest purpose of this broad grant of legal and equitable power is to

enable the courts to fashion whatever remedy is required to fully compensate an employee for the economic injury sustained by him. The power so granted is sufficient to authorize an award of future loss of earnings in appropriate cases. To deny that authority would defeat a purpose of the Act to make a victim of discrimination 'whole' and to restore him to the economic position he would have occupied but for the unlawful conduct of his employer. To deny such authority would remove a deterrent force against future violations."

560 F.Supp. at 1168 (footnotes omitted). We agree. The power to grant equitable relief provided in the ADEA clearly stands in addition to the monetary relief available under the FLSA sections and is expressly stated to be without limitation. When we read this section as a whole and construe it liberally, as we must, see Dartt, 539 F.2d at 1260, we conclude that the legal and equitable remedies available under the ADEA are not limited either to those specifically listed or to those available under the FLSA, so long as the relief is "appropriate to effectuate the purposes of [the Act]." 29 U.S.C. § 626(b).

We held in Blim that reinstatement is the preferred remedy under the ADEA and should be ordered whenever it is appropriate. 731 F.2d at 1479; see also Gibson, 695 F.2d at 1101; Cancellier, 672 F.2d at 1319. Reinstatement may not be appropriate, however, when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible. See, e.g., Dickerson v. Deluxe Check Printers, Inc., 703 F.2d 276, 281 (8th Cir.1983); Cancellier, 672 F.2d at 1319–20; Whittlesey v. Union Carbide Corp., 567 F.Supp. 1320, 1330 (S.D.N.Y.1983); Hoffman. v. Nissan Motor Corp., 511 F.Supp. 352, 355 (D.N.H. 1981). Under such circumstances, an award of future damages in lieu of reinstatement furthers the remedial purposes of the ADEA by assuring that the aggriev-

ed party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct. See Ventura v. Federal Life Insurance Co., 571 F.Supp. 48, 50 (N.D.Ill.1983). If this were not the case, an employer could avoid the purpose of the Act simply by making reinstatement so unattractive and infeasible that the wronged employee would not want to return.[2] See, e.g., Cancellier, 672 F.2d at 1319–20.

██ We recognize that future damages have been criticized as uncertain and speculative. See, e.g., Foit v. Suburban Bancorp, 549 F.Supp. 264, 267 (D.Md.1982). However, given our conclusion that they are available under the ADEA, "[t]he mere fact that damages may be difficult of computation should not exonerate a wrongdoer from liability. The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.'" Koyen, 560 F.Supp. at 1169 (quoting Bigelow v. RKO Radio Pictures, 327 U.S. 251, 265, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946)). Courts are able to alleviate the uncertainty of future damages by taking into account a discharged employee's duty to mitigate, "the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards." Id. at 1168–69.

In any event, uncertainty is not a relevant consideration in this case because the court did not grant future wages. Tanner's pension had vested at the time of trial and the parties stipulated that the $17,000 in pension benefits would provide Tanner the same pension upon retirement that he would have received had he not been illegally discharged.

---

2. A plaintiff need not "request reinstatement as a prerequisite to obtaining front pay where the evidence reveals an atmosphere of hostility." *Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945, 957 (10th Cir.1980) (Title VII); *Koyen,* 560 F.Supp. at 1169.

In its memorandum supporting its proposed judgment and order filed below, the EEOC stated:

"Front pay is requested in lieu of reinstatement in that the defendant has steadfastly refused to consider reinstatement as a remedy since the date of receipt of Mr. Tanner's charge of discrimination. It has been two and one-half (2½) years since Mr. Tanner's discharge and defendant's expressed hostile attitude toward its former employees, both during conciliation attempts and at trial, makes reinstatement a virtual impossibility as a remedy."

Rec., vol. II, at 452. The record contains evidence to support this contention.[3] However, the district judge did not state why future damages are more appropriate than reinstatement. The trial court must make this assessment in the first instance. Accordingly, we remand for the court to reconsider its award of future pension benefits in light of our decision in *Blim* and the analysis set forth above, and to articulate the evidence and rationale underlying its decision.

## V.

### THE WILLFULNESS INSTRUCTION

The ADEA, 29 U.S.C. § 626(b), provides that amounts owing to a person as a result of a violation of the Act are deemed unpaid minimum wages or unpaid overtime compensation for purposes of section 216 of the FLSA. Under section 216, an employer who violates the FLSA is liable for these amounts plus "an additional equal amount as liquidated damages."[4] *Id.* § 216(b). However, the ADEA provides that "liquidated damages shall be payable only in cases of willful violations of this chapter." *Id.* § 626(b).

In this case the trial court instructed the jury that

"A willful violation occurs when a person acts with specific intent to violate the law, where with knowledge of the law he proceeds, or it proceeds to violate the law knowingly and intentionally.

"In other words, you can find willful discrimination for age, or willful violation of the law, only if you find both that Prudential violated the law by discharging or reassigning complaining employees because of their age, and that Prudential knew, or should have known at the time that it decided to discharge or reassign the complaining employees, that such decisions and actions were in violation of the law and were intentionally and knowingly done in violation thereof."

Rec., vol. XV, at 1121–22. On appeal the EEOC contends that this instruction erroneously imposed too strict a standard by requiring proof that the employer specifically intended to violate the law. We agree.

■ This court has held that a violation of the ADEA is willful when the employer "acted in the face of the ADEA" and was "fully aware that the Act was 'in the picture.'" *Mistretta v. Sandia Corp.*, 639 F.2d 588, 595 (10th Cir.1980) (quoting *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.1971), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972)). In so doing we have adopted the same definition of willfulness that we apply in determining whether a violation of the FLSA is willful for statute of limitation purposes. *See, e.g., id.; EEOC v. Central Kansas Medical Center*, 705 F.2d 1270,

---

**3.** Indeed, Prudential has not indicated on appeal that it would prefer reinstatement over the payment of pension benefits.

**4.** The ADEA authorizes the recovery of "liquidated damages (calculated as an amount equal to the pecuniary loss) which compensate the aggrieved party for nonpecuniary losses ... that are 'too obscure and difficult of proof for estimate other than by liquidated damages ....'"

H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* 1978 U.S.Code Cong. & Ad. News 504, 528, 535 (quoting *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222–23, 86 L.Ed. 1682 (1942)). "[L]iquidated damages are in the nature of legal relief," *id.*, and "are not intended to take the place of equitable relief." *Dickerson*, 703 F.2d at 280.

1273, 1274 (10th Cir.1983). Under this standard, "[a] violation may be willful *even if an employer does not have specific knowledge that his actions violate the Act* .... Instead, '[a] violation is willful when the employer was, or should have been, cognizant of an appreciable possibility that the employees involved were covered by the statutory provisions.'" *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85 (10th Cir.1983) (quoting *Central Kansas Medical Center*, 705 F.2d at 1274) (emphasis added). Accordingly, the instruction given by the court here was erroneous.[5]

■ The record contains testimony by Prudential executives and members of the board demonstrating that the company in fact knew its employees were protected by the ADEA, and Prudential does not contend to the contrary on appeal. Based on this uncontested evidence, we conclude as a matter of law that Prudential's conduct in terminating Tanner constituted a willful violation within the meaning of the ADEA. *Cf. Sinclair v. Automobile Club of Oklahoma, Inc.*, 733 F.2d 726, 729–730 (10th Cir.1984).

■ In so doing we address the question left undecided in *Mistretta*, 639 F.2d at 595 n. 4, and hold that the good faith defense of section 11 of the Portal-to-Portal Pay Act, 29 U.S.C. § 260, is not incorporated into the ADEA. This section, which applies to awards of liquidated damages under the FLSA, "grants courts authority to deny or limit liquidated damages where the 'employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith ....'" *Lorillard*, 434 U.S. at 581–82 n. 8, 98 S.Ct. at 870–71 n. 8 (quoting 29 U.S.C. § 260). As the Supreme Court pointedly has ob-

served, although the ADEA expressly incorporates other provisions of the Portal-to-Portal Pay Act, "the ADEA does not make any reference to § 11." *Id.* We join those courts that have found this omission significant and conclude that the good faith provision of section 11 is not available in ADEA cases. *See, e.g., Hill v. Spiegel, Inc.*, 708 F.2d 233, 238 (6th Cir.1983); *Goodman v. Heublein, Inc.*, 645 F.2d 127, 129–30 (2d Cir.1981); *Kelly v. American Standard, Inc.*, 640 F.2d 974, 981–82 (9th Cir.1981); *Wehr v. Burroughs Corp.*, 619 F.2d 276, 279 (3d Cir.1980); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1020 (1st Cir. 1979).

■ Once a violation of the ADEA is determined to be willful, the award of liquidated damages is mandatory, and the court is without discretion "to award liquidated damages in an amount other than that equal to the award for compensatory damages." *Hill*, 708 F.2d at 238; *see also* H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S.Code Cong. & Ad.News 528, 535 (ADEA provides liquidated damages calculated as amount equal to pecuniary loss to compensate for nonpecuniary losses arising from willful violation). Accordingly, plaintiff is entitled to liquidated damages in an amount equal to the $34,200 in pecuniary losses found by the jury.

The judgment is affirmed insofar as it awards plaintiff $34,200 in lost wages. It is reversed insofar as it fails to award liquidated damages, and the case is remanded with directions to enter judgment in the additional amount of $34,200. The judgment is also reversed insofar as it awards plaintiff $17,000 in future pension and retirement benefits, and the case is

---

5. Prudential argues that this issue is not properly before us because the EEOC did not propose to the trial court the instruction it now contends should have been given. Although the EEOC objected to the instruction given, the instruction it offered, while approved by several circuits, was not in the form articulated by this court. Even assuming that the EEOC failed properly to

preserve the issue for appeal, however, we conclude that the instruction given constituted plain error affecting substantial rights. "[W]e will review instructions not properly objected to at trial where the error is plain and significant." *Fox v. Ford Motor Co.*, 575 F.2d 774, 786 (10th Cir.1978).

remanded for reconsideration of this relief in light of this opinion.

BARRETT, Circuit Judge, dissenting in part.

I agree with the dissent filed by Chief Judge Seth in *Blim v. Western Elect. Co., Inc.,* 731 F.2d 1473 (10th Cir.1984) that front pay is not a remedy contemplated by the ADEA. *See also, Kolb v. Goldring,* 694 F.2d 869 (1st Cir.1982).

Chief Judge Seth carefully reviewed the legislative history of ADEA and he concluded that "allowing front pay runs against the intent of Congress in limiting legal remedies to 'unpaid wages and unpaid overtime compensation.' The court should not use its equitable powers to frustrate the intent of the statute." 731 F.2d at 1481. Judge Seth set forth salutary reasons for the disallowance of front pay, after recognizing that liquidated damages may be recovered for willful violations:

The front pay damages are too uncertain to be considered "lost wages" or "lost earned benefits." The possibilities of promotions, legitimate demotions, terminations, or death inject too many unknowns. In these circumstances the award of front pay is too speculative to be considered pecuniary damages under the statute. The enforcement section of the ADEA was specifically constructed to limit the type of available damages. As mentioned, although the statute grants broad equitable powers those powers cannot be used to expand the legal remedies specifically detailed in the statute. *Id.* at 1481.

In *Plyler v. Doe,* 457 U.S. 202, 242, 102 S.Ct. 2382, 2408, 72 L.Ed.2d 786 (1982) the Supreme Court observed that "[T]he Constitution does not constitute us [the Justices of the Supreme Court of the United States] as 'Platonic Guardians' nor does it vest in this Court the authority to strike down laws because they do not meet our standards of desirable social policy, 'wisdom,' or 'common sense.' " In like manner the court should be ever cautious not to play the role of a superlegislature.