**Mario GOICO, Plaintiff,**

v.

**THE BOEING COMPANY, Defendant.**

**No. 02–1420–WEB.**

United States District Court,
D. Kansas.

Dec. 7, 2004.

Jeff C. Spahn, Jr., Martin, Pringle, Oliver, Wallace & Bauer, LLP, Wichita, KS, for Plaintiff.

Forrest T. Rhodes, Jr., Mikel L. Stout, Foulston Siefkin LLP, Wichita, KS, for Defendant.

*Memorandum and Order*

WESLEY E. BROWN, Senior District Judge.

This matter is before the court for entry of judgment in light of the jury's special verdict. The court requested briefing from the parties and heard arguments on the issues relating to entry of judgment. The briefs have now been filed and the court is prepared to rule.

Plaintiff Mario Goico brought claims against his employer, the Boeing Company, alleging (among other things): age discrimination under the ADEA (29 U.S.C. § 621 et seq.) and KADEA (K.S.A. § 44–1111); national origin discrimination in violation of 42 U.S.C. § 1981, Title VII (42 U.S.C. § 2000e et seq.) and the KAAD (K.S.A. § 44–1001); and unlawful retaliation in violation of the foregoing statutory provisions. These claims were submitted to a jury, which returned a verdict as follows. The jury found Boeing discriminated against plaintiff on account of his age and that such conduct was willful. It found that Boeing retaliated against plaintiff for complaining of discrimination, and that Boeing did so with malice or reckless indifference to plaintiff's rights such that Boeing should be subject to punitive damages. The jury found Boeing did not discriminate against plaintiff on account of his national origin. The court gave the jury an agreed-upon instruction concerning general damages (*See* Instruction No. 21). Under that instruction, the jury was told it could award three types of damages if it found for plaintiff on any of his claims: *first,* back pay (lost wages and benefits up to the date of trial); *second,* compensatory damages (for emotional pain and mental anguish); and *third,* future lost wages and benefits (from the time of trial until the date plaintiff was likely to retire). The court also instructed the jury regarding punitive damages. The jury found the following amounts for each of these categories:

1. Back pay—$30,998
2. Compensatory damages—$625,000
3. Future lost wages and benefits—$370,437
4. Punitive Damages—$1,500,000.

## I. Issues Relating to Entry of Judgment.

### A. Back Pay and Prejudgment Interest on Back Pay.

Plaintiff contends the judgment should include the full amount of back pay determined by the jury ($30,998), plus prejudgment interest at an annual rate of 10% ($6,624).

Defendant contends the jury's back pay determination should be reduced by the court because its finding was based on plaintiff's damage calculation, which according to Boeing failed to consider the value of annual contributions made on plaintiff's behalf through Boeing's Financial Security Plan ("FSP"). Boeing argues the uncontroverted evidence showed the value of these contributions for 2002–04 was $4,622. Boeing further contends plaintiff improperly included a pilot bonus of $2,845 awarded in February 2002, which was prior to the date plaintiff was passed over for the pilot positions. Lastly, defendant argues plaintiff should not be granted prejudgment interest on back pay (and that the 1% interest included in plaintiff's calculation should be excluded). If prejudgment interest is awarded, defendant argues it should be based on the rate used by the Internal Revenue Service, which according to defendant would be 6% for 2002 and 5% for 2003–04. Applying the foregoing reductions would reduce the back pay award to $23,212. Prejudgment interest at defendant's suggested rate would amount to $4,395.

■ A plaintiff who suffers a violation of the ADEA or Title VII is entitled to recover monetary damages in the form of back pay. *See e.g. Commissioner of Internal Revenue v. Schleier,* 515 U.S. 323, 336, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (monetary damages under the ADEA are limited to back wages and liquidated damages); 42 U.S.C. § 2000e–5(g)(1) (back pay authorized for violation of Title VII). An award of back pay compensates a plaintiff for lost wages and benefits between the time of the adverse employment action and the trial court judgment. *Johnson v. Spencer Press of Maine,* 364 F.3d 368, 379 (1st Cir.2004).

■ Although neither party has raised the issue, the court notes that the law provided plaintiff a right to jury trial on his ADEA claim, including a right to have the jury determine any issue of fact in an action for amounts owing as unpaid wages. *See Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). This right was expressly made a part of the ADEA after the *Lorillard* decision. *See* 29 U.S.C. § 626(b) (a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action). *Lorillard* indicates that this right to jury trial encompasses a jury's determination of the amount of back pay owing, because such amounts are considered to be "amounts owing as unpaid wages" under the ADEA. *See Lorillard,* 434 U.S. at 583, n. 11, 98 S.Ct. 866. *See also id.* at 584, 98 S.Ct. 866 (in contrast to the ADEA, under Title VII the availability of back pay is a matter of equitable discretion). Under the circumstances, the court concludes it has no equitable discretion to determine the appropriate amount of back pay. The court will therefore include in the judg-

ment the full amount of the back pay determined by the jury. *Cf. Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (where Seventh Amendment applies, trial court's discretion may be limited to granting new trial or remittitur for jury finding against the weight of the evidence).

■ With regard to prejudgment interest, Title VII and the ADEA both authorize prejudgment interest as part of the back pay remedy. *Loeffler v. Frank,* 486 U.S. 549, 558, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988); *Kolb v. Goldring, Inc.,* 694 F.2d 869, 875 n. 6 (1st Cir.1982). An award of prejudgment interest may be necessary to see that victims of discrimination are made whole by being compensated for the lost value of not having the use and benefit of back wages from the time they should have been paid. *See Loeffler.* The rule in the Tenth Circuit, however, is that prejudgment interest is not available under the ADEA where the plaintiff receives an award of liquidated damages. *See Blim v. Western Elec. Co., Inc.,* 731 F.2d 1473 (10th Cir.1984); *Greene v. Safeway Stores, Inc.,* 210 F.3d 1237, 1247 (10th Cir.2000) (affirming that under *Blim* the law of the circuit is that "prejudgment interest is not available under the ADEA if plaintiffs receive liquidated damages."). *But see Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094 (11th Cir.1987) (calling into question *Blim* in light of Supreme Court ruling on the punitive nature of liquidated damages). Although *Blim* is not strictly applicable here because the plaintiff's retaliation claim was based upon Title VII as well as the ADEA—and thus Title VII might serve as an independent basis upon which to grant prejudgment interest—the court concludes that the reasoning of *Blim* and *Greene* does apply in these circumstances. An award of prejudgment interest in addition to the liqui-

dated damages in this case would amount to a windfall to the plaintiff, and is not necessary to ensure that plaintiff receives full compensation. Accordingly, the court will not include any prejudgment interest in the judgment.

### B. Front Pay.

█ The jury's verdict included a finding that plaintiff should be awarded damages for future net lost wages and benefits (i.e. "front pay") in the amount of $370,437.[1] Both parties agree the jury's finding was made in an advisory capacity, and the court therefore has the responsibility of exercising equitable discretion to determine the nature and amount of front pay. *Cf. Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1427 (10th Cir.1991). Plaintiff urges the court to adopt the jury's finding, which he argues is supported by plaintiff's uncontroverted testimony that he intended to work as a test pilot position until retiring at the age of 67. He also argues that the entire award of front pay is necessary to provide an adequate remedy for Boeing's discrimination, because it will be nearly impossible for plaintiff to find a similar test pilot position elsewhere. The jury's finding of lost future wages and benefits was based on plaintiff's Exhibit 44, with an additional reduction of approximately $30,000, perhaps reflecting the value of contract bonuses plaintiff is likely to receive as an engineer. *See* Doc. 142 at p. 7; Doc. 136 at p. 4.

Defendant contends the jury's finding on front pay is vastly inflated because it was based on plaintiff's damage calculations, which accordingly to Boeing contained several faulty assumptions. Boeing contends plaintiff's calculation underestimated the likely raises he will receive as an engineer, and then overestimated the likely raises he would have received as a pilot. Next, it contends plaintiff failed to account for the value of FSP contributions. Next, it argues plaintiff improperly included a loss for difference in payment of sick leave at retirement, when the evidence showed there was no difference in value between the two positions. And finally, Boeing argues that plaintiff's determination of present value was improperly inflated by his assumption of a too-low 1% annual rate of interest.[2]

The Tenth Circuit recently noted the following concerning front pay:

"[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 846, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001). Front pay is an appropriate remedy under both the ADEA, *see Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 637 (10th Cir. 1988), and Title VII, *see Pollard,* 532 U.S. at 849–50, 121 S.Ct. 1946. Although reinstatement is the preferred remedy and should be ordered whenever it is appropriate, it is not always a viable

---

**1.** Insofar as Title VII claims are concerned, a front pay award is not considered part of "compensatory damages" and is not subject to the statutory cap on future pecuniary losses in 42 U.S.C. § 1981a. *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001).

**2.** Boeing also requested that the court set a schedule for the parties to submit proposed findings as to front pay after a transcript of

the trial is available. The court concludes that such a procedure would unduly delay the entry of judgment and is unnecessary. The court heard the evidence during the trial, and it has now received two briefs from Boeing on the appropriate judgment to be entered. The materials now before the court are sufficient to permit the court to exercise its discretion and determine the amount of the award.

option. "In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement." *Id.* at 846, 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62. In such cases an award of front pay as a substitute for reinstatement is "a necessary part of the 'make whole' relief mandated by Congress...." *Id.* at 850, 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62.

*Abuan v. Level 3 Communications, Inc.,* 353 F.3d 1158, 1176 (10th Cir.2003). Plaintiff has argued—without contradiction from Boeing—that reinstatement [or appointment] to a test pilot position is not a reasonable possibility here. The court agrees and finds that reinstatement is not a viable option. "Under such circumstances, an award of future damages in lieu of reinstatement furthers the remedial purposes of the ADEA [and Title VII] by assuring that the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct." *Id.* (quoting *EEOC v. Prudential Fed. Sav. & Loan Ass'n,* 763 F.2d 1166, 1173 (10th Cir.1985)).

■ "In determining whether, and how much, front pay is appropriate, the district court must attempt to make the plaintiff whole, yet the court must avoid granting the plaintiff a windfall." *Abuan,* 353 F.3d at 1177 (citation omitted). A determination of front pay requires the district court to predict future

events and consider many complicated and interlocking factors, *see id.,* including the possibilities of promotions, demotions, terminations, changes in business circumstances, and death. *See Greene v. Safeway Stores, Inc.,* 210 F.3d 1237, (10th Cir.2000). These unknowable factors always make a front pay award somewhat speculative. *Wulf v. City of Wichita,* 883 F.2d 842, 873 (10th Cir.1989). But a defendant should not be able to take advantage of the fact that its unlawful conduct is the cause of such uncertainty. *Id.*

■ The court agrees with several of the defendant's contentions regarding front pay. Specifically, the court agrees that plaintiff's calculation somewhat underestimates the annual raises he will likely receive as an engineer (3% according to Pl. Exh. 44) while simultaneously overestimating the likely raises (5.6%) he would have received as a test pilot. The result of these assumptions is that plaintiff's estimation of wage differences for these two positions is significantly overstated, particularly towards the end of plaintiff's projected work years.[3] (Plaintiff's estimate likewise overstates the likely differences in retirement benefits between his engineer position and what he would have received as a pilot.). Boeing's calculation, on the other hand, employs an assumption of 4% raises for both positions, which the court finds to be a more reasonable estimate that takes into account plaintiff's experience and the evidence of longer-term historical averages. Additionally, the court sees nothing in plaintiff's brief to contradict Boeing's assertion that the value of FSP contribu-

---

**3.** For example, although plaintiff estimated a salary differential of only $5,600 in the first year he lost out on the pilot position, by year 2012 he projects a salary differential of $36,900. Pl. Exh. 44. The court rejects plaintiff's argument that no reduction should be made because he used a low salary figure to determine what he would have made as a pilot. The starting salary figure for the pilot position used by both the plaintiff and defendant in their calculations was reasonable and supported by the evidence.

tions and sick leave should be excluded from the loss calculation. Perhaps most significantly, the court agrees with Boeing that the discount rate of 1% applied by plaintiff to determine the present value of his future lost wages and benefits is unreasonably low, particularly in view of the fact plaintiff is seeking wages projected 8 years into the future and benefits extending some 20 years. Given this relatively long time frame, a reasonable person investing in relatively safe investments would almost certainly be able to obtain a net return closer to the 5% annual rate employed by Boeing than the 1% assumed by plaintiff. *Cf. Hull by Hull v. United States*, 971 F.2d 1499, 1511–12 (10th Cir.1992) (courts typically employ a 1–3% net discount rate). Of course, as Mr. Ikeda testified, the rate of return could vary anywhere from 2% to 10% depending upon the investment vehicle chosen, but one thing is clear: a discount rate of 1% over 20 years is clearly inadequate and would result in a windfall to the plaintiff. Under the circumstances, the 5%—or more precisely, 5.12%—figure used by Boeing represents the most reasonable basis upon which to estimate the present value of plaintiff's lost future wages and benefits. The court concludes that the 5.12% discount rate is also appropriate for another reason. Some adjustment should be made here to reflect the fact that front pay becomes more speculative as it is projected farther into the future. *See Peyton v. DiMario*, 287 F.3d 1121, 1128 (D.C.Cir.2002) ("The longer a proposed front pay period, the more speculative the damages become."). While the court does not doubt plaintiff's stated intention to continue working as a test pilot until the age of 67, there are any number of contingencies that could have prevented him from doing so—such as a material change in plaintiff's circumstances or in the business operations of the defendant. A slightly higher discount rate than might otherwise apply is one way of reflecting the risk of such contingencies occurring. *Cf. E.E.O.C. v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1173 (10th Cir.1985) (courts may alleviate the uncertainty of future damages by taking into account various factors, including discounting to present value); *Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320, 326–27 (7th Cir.1992) (front pay award had to be reduced to take into account contingencies, including the risk of plaintiff's death and the volatile nature of earnings for the particular position).

In sum, the court believes plaintiff's calculations are based upon flawed assumptions and should not serve as the basis of the front pay award. Under the evidence presented, Boeing's estimation—with one or two exceptions—presents a much more reasonable and equitable estimation of appropriate front pay. Boeing estimated the present value of plaintiff's total front pay damages to be $115,813. Def. Exh. 474c. That determination, however, was based in part on an assumption that plaintiff would retire at age 65, whereas the evidence indicated plaintiff intended to continue working until age 67. As such, the court will adjust Boeing's front pay estimation to reflect the fact that plaintiff likely would have retired from a pilot position at age 67. Given the relatively speculative nature of making a determination this far into the future, however, the court believes that a rounded estimate, based on the evidence of prior years, will suffice. The court will include an increase of $15,000 to reflect the present value of wages and benefits lost by plaintiff assuming retirement at age 67.[4]

4. Boeing estimated a wage and benefit differential of approximately $15,000 and $11,000, respectively, in the years 2010 and 2011, with corresponding present values of about

(While the court could require the parties to calculate a more precise damage figure assuming a retirement age of 67, the increased precision from doing so would not, in the court's view, add to the reliability of the estimate. Under the circumstances, the court concludes that the above award is a reasonable and reliable estimate of the value of the loss suffered by plaintiff.). Accordingly the court determines that front pay of $130,913 represents a just and equitable award under the evidence presented, and that this sum should be included in the judgment.

### C. Compensatory and Punitive Damages.

■ The jury found compensatory damages (i.e. damages for mental pain and suffering) in the amount of $625,000, and punitive damages of $1,500,000. Both sides agree that insofar as plaintiff's claim is based on Title VII, the recoverable compensatory and punitive damages combined are capped at $300,000 pursuant to 42 U.S.C. § 1981a. That limitation does not apply to claims under the ADEA, however, and insofar as plaintiff's claim for retaliation is based upon the ADEA, plaintiff maintains he is entitled to recover all of the compensatory and punitive damages not included in other claims or categories, which according to plaintiff amounts to $1,822,992. Plaintiff's argument is based on a line of cases, including *Travis v. Gary Comm. Health Center, Inc.,* 921 F.2d 108 (7th Cir.1990), holding that the particular remedy provision that applies to retaliation claims under the ADEA authorizes a plaintiff to recover both compensatory and punitive damages. For the reasons that follow, the court finds this argument unpersuasive.

The ADEA prohibits discrimination against an employee on account of age. 29 U.S.C. § 623(a). It also prohibits an employer from discriminating because the employee has complained of age discrimination. 29 U.S.C. § 623(d). The enforcement provisions of the ADEA, which were patterned after the Fair Labor Standards Act (FLSA), state in part that the ADEA shall be enforced in accordance with the provisions of the FLSA, including Section 216 of Title 29. See § 626(b). It further states that any violation of the ADEA shall be deemed a violation of the FLSA, and that amounts owing to a person as a result of a violation of the ADEA shall be deemed unpaid wages or overtime compensation under the FLSA—items that are specifically designated as recoverable damages under the FLSA. *Id.* Like the FLSA, the ADEA also authorizes an award of liquidated damages, but under the ADEA such damages are allowable only in cases of willful violations. The ADEA provides that in an action under the Act, the court has jurisdiction to grant "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime under this section...." *Id.* It further provides that any person aggrieved by a violation may bring a civil action "for such legal and equitable relief as will effectuate the purposes of this chapter," and it provides a right to jury trial on any issue of fact in an action for recovery of amounts owing as a result of a violation. § 626(c). The above provisions authorizing "legal relief" and the anti-retaliation clause have been part of the

---

$11,500 and $8,000. Def. Exh. 474c. The court's estimated differential for 2012 is somewhat higher to reflect the likelihood that

the disparity would probably be greatest in the last year of plaintiff's employment.

ADEA since its inception in 1967. *See* 29 U.S.C. § 626 (1970).

◼ Although this authorization to grant "such legal ... relief as may be appropriate" could have been broadly interpreted to include tort-type damages for mental anguish and punitive damages, an overwhelming majority of courts—including the Tenth Circuit—have long held that such is not the case. *See e.g. Bruno v. Western Elec. Co.,* 829 F.2d 957, 966 (10th Cir.1987) (finding punitive damages not allowed and citing cases from numerous circuits); *Perrell v. FinanceAmerica Corp.,* 726 F.2d 654, 657 (10th Cir.1984) (compensatory damages for mental suffering are not allowed under the ADEA; citing eight other circuits reaching the same conclusion). The term "legal relief" under the ADEA has long been held to be limited to the types of economic damage enumerated in the statute, including unpaid wages. *Perrell,* supra. *See also Villescas v. Abraham,* 311 F.3d 1253, 1259 (10th Cir.2002) (examining immunity clause in § 633(a), and noting it is established law that separate damages for emotional distress are not available under identical "legal or equitable relief" clauses in private sector ADEA cases). The courts have similarly held that the FLSA's enforcement provisions, which are incorporated by reference in the ADEA, do not permit a plaintiff to recover mental distress or punitive damages of this type. *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1446 (11th Cir.1985).

In *Comm. of Internal Revenue v. Schleier,* 515 U.S. 323, 336–37, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995), a case dealing with the tax consequences of an ADEA settlement, the Supreme Court rejected a plaintiff's argument that his settlement was not taxable because it was received "on account of personal injuries." In addressing this claim, the Court observed that "the Courts of Appeals have unanimously held, and respondent does not contest, that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress." *Id.* at 326, 115 S.Ct. 2159 (citing numerous circuit cases). The Court further noted that the pre–1991 version of Title VII provided no compensation "for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages," and it stated the ADEA likewise permitted no such remedy: "Like the pre–1991 version of Title VII, the ADEA provides no compensation 'for any of the other traditional harms associated with personal injury.' Monetary remedies under the ADEA are limited to back wages, which are clearly of an 'economic character,' and liquidated damages, which we have already noted serve no compensatory function." *Id* at 336, 115 S.Ct. 2159.[5]

◼ Against this backdrop of nearly uniform authorities holding that the right to "legal" relief in the ADEA does not authorize recovery of damages for pain and suffering or punitive damages, the Seventh Circuit appears to have created a special exception applicable only to retaliation claims. In *Travis v. Gary Comm.*

---

5. *See also Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), in which the Supreme Court concluded there was a right to jury trial under the ADEA. The Court did so by construing the ADEA in light of the related FLSA provisions, and noting that the ADEA provided a right to "legal" relief, which is a term of art. *Id.* at 583, 98 S.Ct. 866. From

this, the Court said, "We can infer, therefore, that by providing specifically for 'legal' relief, Congress knew the significance of the term 'legal,' and intended that there would be a jury trial on demand to 'enforc[e] ... liability *for amounts deemed to be unpaid minimum wages or unpaid overtime compensation.'*" (emphasis added).

*Mental Health Center,* 921 F.2d 108 (7th Cir.1990), the court found that a 1977 amendment to the FLSA, which added language essentially identical to the "appropriate legal relief" provision of the ADEA,[6] changed the FLSA to now permit a plaintiff to recover punitive damages and compensation for emotional distress on a retaliation claim. This conclusion was appropriate, the court said, because:

> Appropriate legal relief includes damages. Congress could limit these damages, but the 1977 amendment does away with the old limitations without establishing new ones. Compensation for emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge.

*Id.* at 112. The court cited no authority for its finding, nor did it mention the ADEA or any of the case law construing the nearly identical ADEA language. In a subsequent case, a panel of the Seventh Circuit pointed out that the ADEA's language authorizing "such legal or equitable relief" as may be appropriate "is broad enough to encompass a claim for [consequential] damages, but only when the language is taken out of its context." *Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279, 283 (7th Cir.1993). Viewed in light of its history and relation to the FLSA, the ADEA language more properly allows a plaintiff to recover wages and benefits that

the employer should have given the employee but did not because of the discrimination, but it excludes consequential damages such as mental distress. *Id.* at 283. Despite this, the *Moskowitz* panel did not question the validity of *Travis* because it said that decision relied on an FLSA amendment "that appears to make clear that Congress meant to enlarge the remedies available for [retaliation] beyond those standardly available for FLSA (and ADEA) violations." *Id.* at 284.

It is not clear at all to this court that the 1977 FLSA amendment was intended to permit recovery of consequential and punitive damages on retaliation claims. In fact, when the amendment is examined in light of the parallel ADEA provisions and the items enumerated in both statutes, the more reasonable interpretation would appear to be that Congress understood the limited remedies available under the ADEA retaliation provision and intended to adopt the same standard for FLSA retaliation claims. *Cf. Lorillard,* 434 U.S. at 581, 98 S.Ct. 866. *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3rd Cir.1977) (damages for emotional suffering not allowable under the ADEA). *See also Snapp v. Unlimited Concepts, Inc.,* 208 F.3d 928, 934 (11th Cir.2000)(applying canon of *ejusdem generis* to reject *Travis'* finding that punitive damages are available under the FLSA). Viewed in

---

**6.** The 1977 amendment to 29 U.S.C. § 216(b) provided in part that "Any employer who violates the provisions of section [215(a)(3)], i.e. the FLSA anti-retaliation provision] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section [215(a)(3)], including without limitation employment, reinstatement or promotion and the payment of wages lost and an additional amount as liquidated damages."

The *Travis* panel noted there was no legislative history explaining this amendment, as a result of which the panel construed the term "legal relief" according to its commonly un-

derstood definition, which would include both consequential and punitive damages. But if the provision had been examined in light of related statutes previously adopted by Congress (including the ADEA and Title VII) and the courts' long-standing construction of those laws, the panel might well have inferred that Congress intended no more than to grant plaintiffs on an FLSA retaliation claim a right to obtain the same type of legal relief as was available under the ADEA—which clearly did not include consequential and punitive damages.

context, the amendment does not support the view that Congress intended to single out retaliation claims under the FLSA (or ADEA) for potentially far greater recovery than it allowed with respect to virtually all other types of employment discrimination claims.[7]

In sum, the court finds that the *Travis* exception for retaliation claims is not well-founded, and is not a persuasive basis for abandoning the long-standing rule that damages for mental distress and punitive damages are not available on claims under the ADEA. Accordingly, the court finds that plaintiff is not entitled to receive any compensatory or punitive damages beyond the $300,000 permitted by Title VII and 42 U.S.C. § 1981a.

### D. *Liquidated Damages.*

 Under the ADEA, an employer may recover liquidated damages where his employer's violation of the statute is willful. 29 U.S.C. § 626(b); *Abuan v. Level 3 Communications, Inc.,* 353 F.3d 1158, 1171 (10th Cir.2003). The jury found that Boeing's violation of the ADEA in this instance was willful. Accordingly, the court will award liquidated damages. The parties appear to agree that the amount of the award is to be based on the back pay, and that front pay damages are properly excluded from this calculation. *Cf. Greene v. Safeway Stores, Inc.,* 210 F.3d 1237, 1246 (10th Cir.2000). The court will therefore include liquidated damages of $30,998 as part of the judgment.

### E. *Summation.*

Under the jury's verdict and the foregoing findings, the court determines plaintiff is entitled to a judgment that includes the following:

| | |
|---|---|
| Back pay: | $ 30,998 |
| Future lost wage and benefits: | $130,913 |
| Compensatory and Punitive Damages: | $300,000 |
| Liquidated damages: | $ 30,998 |
| TOTAL: | $492,909 |

### II. *Conclusion.*

Based upon the foregoing findings, the court determines that the plaintiff Mario Goico shall recover of the defendant Boeing Company the sum of $492,909, plus a reasonable attorney's fee and plaintiff's costs of action. The court will direct the clerk to enter judgment accordingly.

---

**7.** The 1977 amendment may have been prompted by the absence of any express civil remedy for a claim of retaliation under the FLSA. Although retaliation was prohibited conduct under the FLSA prior to the 1977 amendment (see § 215), the civil remedies authorized under § 216(b) did not mention it as a basis for civil relief. *See* 29 U.S.C. § 216 (1970). (Such conduct could constitute a criminal offense under § 216(b) if it was willful.) Under the circumstances, Congress' choice of civil remedy language identical to the ADEA reflects an apparent intention to provide a civil remedy comparable to the one then available under the ADEA. *Cf. Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3rd Cir.1977) (damages for emotional distress not available in ADEA cases).